IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **EMILIO ESTRADA, B55375,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | ) |
| A. DAVID, | ) |
| C/O JOHNSON, | ) Case No. 25-cv-1906-DWD |
| LT. COATES, | ) |
| TEYLOR DOUGLAS, | ) |
| DARRON HYTE, | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| ILL. DEPT. OF CORR., | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Emilio Estrada, an inmate of the Illinois Department of Corrections (IDOC), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Vienna Correctional Center. Specifically, Plaintiff alleges that the defendants injured him during a medical transport and are not providing adequate care for his chronic conditions. Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. §

1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## ANALYSIS

Plaintiff alleges that he suffers from a chronic a neurological injury to his spinal cord, that impacts his neck and right leg. (Doc. 1 at 3). On January 21, 2025, he faults Defendants Johnson and Coates for insisting on using leg irons during a medical transport, despite his protest. (Doc. 1 at 4). Neither Coates nor Johnson would allow Plaintiff to sit for the leg irons to be applied, and he ended up falling while they were attempting to affix the restraints. He claims that this caused paralysis, severe pain, and numbness to his left arm and elbow, because he fell on it. (Doc. 1 at 3-4). Plaintiff faults Defendants Douglas (the healthcare administrator) and Dr. David for not informing Coates or Johnson that leg irons would be unnecessary given his existing right leg paralysis, and he faults Coates and Johnson for not checking with medical staff before using said restraints.

Plaintiff complained to Dr. David about his elbow, and although David was allegedly dismissive, Plaintiff was eventually sent out for an x-ray. (Doc. 1 at 5). He claims the one-month delay for the x-ray is part of Defendant Wexford's policy or custom of delaying or denying off-site visits to save money. Plaintiff complains he was never sent for an MRI on his elbow, though he states he was given an elbow brace.

Plaintiff also alleges he began to have heavy blood in his urine but had to wait a month to be sent to the hospital for a bladder scan. It is unclear if the problem began in February of 2025, or sooner. (Doc. 1 at 5). Around this time, Plaintiff began to experience

severe pain in his right side, and dizziness. He alleges he spoke to Douglas and David about these issues. He also names a handful of nurses whom he informed or saw for these newly emerging issues, but they were not named as defendants in the case caption (nurses Rison, Olge, Ethan, and John). (Doc. 1 at 5). On or around April of 2025, Plaintiff was given medication for his dizziness, but when he informed Dr. David that it was not helping, Dr. David was dismissive. (Doc. 1 at 5-6).

Plaintiff alleges that in February of 2025 an off-site physician recommended a knee brace, but he was not able to secure it from Dr. David, Douglas, or nursing staff until August of 2025. He claims this is an example of inadequate treatment. (Doc. 1 at 6).

Plaintiff alleges he is still suffering from severe neck pain after many months. He states he has informed Dr. David, Douglas, and others about this persistent issue to no avail. (Doc. 1 at 6). He claims his condition has worsened because he was only afforded limited off-site physical therapy appointments and is now forced to "self rehab." (Doc. 1 at 6).

Plaintiff faults Defendant Douglas for violating his right to due process by allegedly providing false information in grievance responses about his access to medical care and the care he has received. (Doc. 1 at 6-7). Plaintiff goes on to allege that it is the custom and practice of medical providers to falsify medical records to cover up wrongful acts against inmates. (Doc. 1 at 7). Plaintiff alleges that Defendant Douglas serves as the ADA coordinator, and she falsely alleged his ADA accommodations are being met despite also admitting there was not any sort of order regarding cuffing or the use of leg irons. (Doc. 1 at 8).

Plaintiff alleges that in August of 2025, Defendants Douglas and Dr. David continued to prescribe an ineffective medication, instead of providing a stronger medication prescribed by a non-party doctor. (Doc. 1 at 8).

Plaintiff then breaks his complaint into eight enumerated counts. He seeks an injunction ordering that more physical therapy visits be scheduled off-site immediate. (Doc. 1 at 14). He also seeks a follow-up evaluation and treatment for his leg and feet, and implementation of any care recommended by off-site providers. Additionally, he seeks extensive monetary compensation. (Doc. 1 at 14-15).

The Court will adopt Plaintiff's eight enumerated claims for analysis of the sufficiency, which are as follows:

>**Claim 1:** **Eighth Amendment deliberate indifference claim against Defendants Johnson, Coates, Dr. David, Douglas, Wexford, and IDOC for the use of restraints during Plaintiff's medical writ in January of 2025;**
>
>**Claim 2:** **Eighth Amendment deliberate indifference claim against Defendants Dr. David, Douglas, Wexford, and IDOC, for limiting or delaying access to prescribed items like medications, braces, a walker, a wheelchair, and therapy;**
>
>**Claim 3:** **Eighth Amendment deliberate indifference claim against Defendants Douglas, Dr. David, and Wexford for delaying and denying adequate exams and off-site care;**
>
>**Claim 4:** **Eighth Amendment deliberate indifference claim against Defendants Johnson and Coates for using restraints in a fashion that caused pain and injury;**
>
>**Claim 5:** **Intentional infliction of emotional distress claim against Defendants Johnson, Coates, Dr. David, and Douglas related to the use of restraints;**

> Claim 6: Due process claim against Defendants Dr. David, Johnson, Coates, Douglas, IDOC and Wexford for the misuse of restraints;
>
> Claim 7: Indemnification act claim against Defendants Dr. David, Johnson, Coates, Douglas, Wexford, and IDOC under 745 ILCS 10/2-302;
>
> Claim 8: Claim for injunctive relief against Defendants Dr. David, Douglas, and IDOC medical providers.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## **Preliminary Dismissals**

There are multiple nurses and providers that Plaintiff discusses and labels within his factual allegations as defendants, but who were not listed in the case caption or listing of defendants. Federal Rule of Civil Procedure 10(a) requires that the caption of the complaint name all the parties. Thus, Plaintiff has not adequately presented his claims against any individuals discussed in the body of the complaint but not named in the caption. The Court did not list these parties in the enumerated claims, and they will not be analyzed any further in this Order.

Plaintiff named the Illinois Department of Corrections as a defendant, but the department itself is not a person subject to suit under § 1983. *See e.g.*, *Will v. Michigan*

*Dept. of State Police*, 491 U.S. 58, 66 (1989) (Section 1983 does not provide a federal forum for litigants who seek a remedy against a state for alleged deprivations of civil liberties). Plaintiff does not identify any sort of federal claim against IDOC other than those framed under § 1983, so IDOC will be dismissed.

Plaintiff named Warden Hyte as a defendant, but he made no mention of Hyte anywhere in his factual allegations or enumerated counts. Naming a defendant without describing their involvement is insufficient to state a claim, so Hyte will be dismissed.

Finally, to the extent that Plaintiff seeks relief under the Fourteenth Amendment for his medical issues, the Court will not further analyze this theory because the Eighth Amendment is the more appropriate framework for assessing claims about the adequacy of care. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (where a claim is covered by a more specific constitutional provision, such as the Eighth Amendment, the Supreme Court has held that the claim must be analyzed under the standard appropriate to that specific provision instead of substantive due process).

## Analysis

### Claims 1, 4, 5, 6, 7

Claims 1, 4, 5, 6 and 7 all deal with the use of restraints for a medical transport on a single occasion in January of 2025. Specifically, Plaintiff faults Defendants Johnson and Coates for applying restraints despite his protest. He asked to take a seat while the restraints were applied, but the officers declined and proceeded as he stood, causing him to fall and injure his left arm. Plaintiff also faults Defendants Douglas and Dr. David for failing to warn transport officers that restraints could be an issue for Plaintiff's conditions.

Plaintiff alleges that after falling, he has continued to experience pain, numbness and even partial paralysis in his left arm, for which he has not received satisfactory treatment.

The use of restraints is sometimes analyzed as an act of excessive force, with attention given to whether the use of force was malicious and sadistic. *See e.g.*, *Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006); *Gates v. Doctors*, 2024 WL 5186647 at * 1 (N.D. Ind. Dec. 19, 2024); *Phillips v. Riggs*, 2018 WL 1738013 at 2 (S.D. Ill. Apr. 11, 2018). Sometimes restraints are also analyzed more generally as deliberate indifference or a condition of confinement. *See e.g.*, *Stewart v. Special Adm'r of Estate of Mesrobian,* 559 Fed. App'x 543, 548 (7th Cir. 2014) (finding that the use of a security box restraint for an inmate with carpal tunnel and bursitis could perhaps support an Eighth Amendment claim); *Gruenberg v. Gempeler*, 697 F.3d 573, 579 (7th Cir. 2012) (discussing restraints as a condition of confinement); *French v. Owens*, 777 F.2d 1250, 1253-54 (7th Cir. 1985) (the pervasive use of mechanical restraints for hours or even days at a time was "outmoded and inhuman.").

Plaintiff's allegations do not tend to suggest a malicious and sadistic sort of behavior, so his situation is best analyzed under the general deliberate indifference framework. To establish deliberate indifference, he needs to demonstrate a serious risk of harm, and total disregard for that risk. At this early juncture, the Court does not find that Plaintiff's allegations are sufficient on either account. He alleges problems with his spine, neck, and right leg, including some degree of paralysis. However, he does not describe the degree of impairment he has on overall mobility, or how readily visible his impairments were to Johnson and Coates. He explained in his complaint that at the time the restraints were applied he was standing with his walker. As they were applying the

restraints, he said it would be easier to accomplish if he sat down, but Johnson ignored what he was saying, attempted to place the restraint on his right leg, and caused him to fall in the process.  The allegations described are an accident, and not an intentional or malicious misdeed taken with knowledge that Plaintiff would suffer.

Plaintiff faults Dr. David and administrator Douglas for failing to inform the correctional officers that he had a disability that might impact restraints, but there is simply no allegation that he ever told any of these four defendants he was unable to wear leg restraints altogether, or that the restraints would cause serious pain.  There is also no allegation that Plaintiff had any sort of medical permit before or after the incident concerning restraints, and he does not suggest he was previously injured by the use of leg irons during a transport (though he does describe an unrelated incident when he was tossed into a transport vehicle and injured).  On the available information, there is not a plausible basis to hold any of the named defendants liable for cruel and unusual punishment or deliberate indifference pertaining to Johnson's application of leg restraints that caused Plaintiff to fall.

Claims 1 and 4 are pure deliberate indifference claims related to the use of the restraints, so those fail for the reasons stated above.  Claim 5 is a Fourteenth Amendment Due Process claim, which is not a viable alternative theory for these facts.  Claims 6 and 7 are state law claims related to these same events, and the Court declines to exercise supplemental jurisdiction over these two claims without any other federal claims proceeding related to the use of restraints.

**Claims 2-3**

In relation to the incident with the restraints, Plaintiff complains that Douglas, Dr. David, and Wexford have delayed his access to care. He claims that he had to wait a month to be taken out for an x-ray because Wexford has a policy of delaying or denying outside care to save money. He also complains that he never received an MRI, and that an elbow brace was prescribed or suggested by an outside provider, but it took more than a month to receive it. He describes severe pain, numbness, and partial paralysis of his left elbow as resulting from the fall.

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component. *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010). A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard). *Id.* To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to deliberate indifference. *Id.* Additionally, an inmate is not entitled to demand specific care, and a medical professional may choose from a range of acceptable courses of care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).

At this early juncture, it is impossible to know if Plaintiff's injury is serious or not, but because he alleges numbness, severe pain, and possible paralysis, the Court will assume for now that he has identified a sufficiently serious injury to warrant treatment.

He claims that both Douglas and Dr. David were aware of his injury, but they did not ensure timely care or minimized the issue relative to his other health needs. For now, these allegations are sufficient to proceed under Claim 2 for the delay of the elbow brace, and under Claim 3 for delaying or denying off-site diagnostic care to assess the injury against Defendants Douglas and David.

As for Wexford, Plaintiff alleges it had a role in the issue because it has a policy or practice of delaying or denying off-site care to save money. Plaintiff does not have any factual allegations to tie his speculation about the existence of this policy to his specific experience with the elbow injury. He was sent out within approximately a month's time, and it is not clear how a delay of this length would serve as a cost-saving measure. The facts he alleges align more closely with potential misdeeds of individual employees, than they do with a systematic problem with care provided by Wexford.

Wexford can be held liable for harms it causes, but not for individual misdeeds of its employees. *See e.g.*, *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653-54 (7th Cir. 2021) (circuit precedent establishes that private corporations acting under color of state law cannot be held liable for an employee's misdeeds, and thus liability turns on if the harm was caused by a corporate policy or custom); *Shields v. Illinois Dept. of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) (a private corporation cannot be held liable under § 1983 unless the constitutional violation was caused by the corporation itself, and not simply by acts of its employees). Plaintiff also has not alleged that the problem was any wider spread that this single incident of delayed care. Although he implies that the problem is broader and that he has experienced other delays, he does not have sufficient allegations of similar

experiences he or other inmates have suffered with the alleged policy of delaying care to save money. *See Howell*, 987 F.3d at 655 n. 1 (the most common path to *Monell* liability is a widespread problem, but inmates have also been allowed to proceed where they allege a recurring problem of their own). Here, the Court finds Plaintiff's allegations insufficient as pled against Wexford to establish liability for a custom or practice related to delays and cost saving.

The Court also considers Plaintiff's other allegations against Douglas and Dr. David. Specifically, he claims that in August of 2025 he was prescribed a stronger medication by an outside provider, but the two have opted not to make the switch in favor of an ineffective existing medication. An inmate is not entitled to demand specific care, but if he can plausibly establish that a provider continued with an ineffective course of care that caused needless undue suffering, he may have a basis to proceed. It is feasible that the medication issue could support an Eighth Amendment claim, but Plaintiff has not provided adequate detail. He has not stated what the medication is meant to treat, how long he has taken a different less effective medication, what (if any) reason he has been given for the decision not to follow the recommendation, and how frequently he has seen or talked to Dr. David or administrator Douglas about the issue. These sorts of details are significant to understanding if this might be a mere disagreement with a course of care, or something more serious.

Plaintiff also generally alleges the care he has been receiving for his chronic conditions is not sufficient because he has had delays in receiving other braces, he has not been sent out as frequently as he feels is necessary for physical therapy, and he seems

to believe there might be other diagnostic care that could occur. For example, he states he was to be given a knee brace in February of 2025 for his right knee, but he did not receive it until August of 2025. Plaintiff provides little detail about the particular need for this item, other than to associate it with chronic issues. Again, all of these issues might with more detail support a claim, but at present they are too generic. In addition to most of these allegations being generic, Plaintiff also has not described specific harms caused by the delay itself as opposed to the underlying condition. A claim of delay ultimately must be backed by a specific independent harm. *See e.g.*, *Petties v. Carter*, 836 F.3d 722, 730-31 (7th Cir. 2016) (to prevail on a claim of delay, a plaintiff must provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged the pain).

The final issue worth mention is Plaintiff's allegation that around February of 2025 he began to see blood in his urine, and eventually to have pain in his right side. He states he was sent out for a scan, but suggests he had to wait about a month for testing on this. He gives no indication of how the issue resolved. He also complains that around this time he experienced dizziness, for which he was given a medication he felt was ineffective. He claims Dr. David simply said it would "go away in time in an unprofessional and uncaring way." Again, the allegations about blood in urine, and dizzy spells may or may not be serious conditions, but Plaintiff has not provided enough contextual information for the Court to fairly assess the severity of these issues or the appropriateness of the Defendants' response.

In sum, the Court will allow Plaintiff to proceed against Dr. David and administrator Douglas in relation to alleged deliberate indifference to his elbow injury

and the alleged delayed receipt of the elbow brace, but all other allegations are dismissed as insufficiently pled from Claims 2 and 3.

**Claims 7, 8**

Claim 7 is a state law claim under 745 ILCS 10/2-302 for indemnification of Defendants Dr. David and Douglas. This statute allows for a local entity to appear and defend on behalf of an employee of a local public entity. *See Ellis v. City of Calumet City, No. C 7238, 2011 WL 4382452, at \*4 (N.D. Ill. Sept. 15, 2011)*. It does not create a private cause of action to sue the employers of state employees. Therefore, Claim 7 will be dismissed.

Claim 8 is really just a demand for preliminary injunctive relief and does not need to be enumerated as a freestanding claim, so this claim will be dismissed.

In conclusion, Plaintiff may proceed on Claims 2 and 3 against Defendants Douglas and Dr. David solely as it pertains to his January 2025 elbow injury. By contrast, all other claims against all other parties are dismissed as insufficiently pled.

As to Plaintiff's request for emergency injunctive relief (Doc. 1 at 14-15), Plaintiff has not filed a freestanding motion, and the injunctive relief he seeks (physical therapy and other outside care as directed by off-site providers) is not clearly tied to the sole claims remaining about his left elbow. Generally, to seek emergency or temporary relief while a case proceeds, an inmate should file a motion under Federal Rule of Civil Procedure 65. Injunctive relief also must be related to the underlying operative claims, but it is not clear that the physical therapy or other follow-up care he seeks has to do specifically with his elbow. Given that the Court has significantly curtailed the scope of

this lawsuit, is not clear on the present condition of his elbow and does not have a request for specific relief tied to his elbow, Plaintiff's request will be denied to the extent it seeks immediate relief. However, he may file a new freestanding request if he has ongoing harm with his elbow, and he may still seek injunctive relief about his elbow at the close of the case.

## Disposition

**IT IS HEREBY ORDERED THAT Claims 2 and 3** of the Complaint (Doc. 1) survive against Defendants Dr. Daivd and administrator Douglas. By contrast, **Claim 1**, **Claims 4-8**, and any other allegations against all other parties are dismissed as insufficiently pled. The Clerk of Court shall **TERMINATE** Defendants Coates, Johnson, Wexford, Hyte, and IDOC for Plaintiff's failure to state a claim against them.

The Clerk of Court is **DIRECTED** to prepare for Defendants Douglas and Dr. David: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not

known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

**IT IS SO ORDERED.**

Dated: November 17, 2025

*s/ David W. Dugan*
DAVID W. DUGAN
United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.